**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**REBECCA HUNTER**                                                                 **PLAINTIFF**

**v.**                                     **Case No.: 4:21-cv-00362-LPR**

**MIDFIRST BANK;
WILSON & ASSOCIATES P.L.L.C.**                                    **DEFENDANTS**

## CONSOLIDATED ORDER

        This case revolves around a 2018 statutory foreclosure sale of Plaintiff Rebecca Hunter's house.  Ms. Hunter sued Defendants MidFirst Bank and its lawyers, Wilson & Associates, in Arkansas state court.  Ms. Hunter alleges that Defendants violated various Arkansas statutes during the foreclosure process.[1]  Ms. Hunter also alleges fraud and other common law torts.[2]

        MidFirst removed the case to this Court.[3]  Ms. Hunter wants to be back in state court and has moved to remand the case.[4]  Both Defendants have filed Motions to Dismiss.[5]  All of these Motions have been fully briefed.  For the reasons that follow, Ms. Hunter's Motion to Remand is DENIED, Wilson & Associates's Motion to Dismiss is DENIED without prejudice as moot, and MidFirst's Motion to Dismiss with prejudice is GRANTED in part and DENIED in part.  Ms. Hunter will have 30 days from the date of this Order to file an Amended Complaint.

---

[1]  Pl.'s Compl. (Doc. 2).

[2]  *Id.* ¶¶ 16, 19–21.

[3]  MidFirst's Notice of Removal (Doc. 1).

[4]  Pl.'s Mot. to Remand (Doc. 14).

[5]  Wilson & Associates's Mot. to Dismiss (Doc. 8); MidFirst's Mot. to Dismiss (Doc. 12).

## Factual Background and Procedural History[6]

On April 2, 2021, Ms. Hunter filed her Complaint in Arkansas state court.[7]  Ms. Hunter is an Arkansas resident.[8]  MidFirst is a savings association "organized under the laws of the State of Oklahoma," having its principal place of business in Oklahoma.[9]  Wilson & Associates is a "Limited Liability Company organized and existing under the laws of the State of Arkansas with its principal place of business" in Arkansas.[10]

According to Ms. Hunter's Complaint, she executed a security instrument in 2008, which conveyed a piece of real property (the "Property") she owned in Little Rock, Arkansas.[11]  From this allegation, the Court draws the following reasonable inferences: (1) Ms. Hunter borrowed money to purchase a house, and (2) Ms. Hunter collateralized the loan by executing, as grantor, a deed of trust (the security instrument).[12]  The security instrument was recorded in the real estate records of Pulaski County, Arkansas.[13]  This instrument was modified in 2015.[14]  This modification resulted in Ms. Hunter being directed to make payments to Midland Mortgage, a division of MidFirst.[15]  At some point after this modification, Ms. Hunter began experiencing

---

[6]  For both the Motion to Remand and MidFirst's Motion to Dismiss, the Court treats the facts alleged in the Complaint as true.

[7]  Pl.'s Compl. (Doc. 2).

[8]  *Id.* ¶ 1.

[9]  *Id.* ¶ 2.

[10]  *Id.* ¶ 3.

[11]  *Id.* ¶ 5.

[12]  "A deed of trust is a deed conveying title to real property to a trustee as security until the grantor repays a loan." *Mortg. Elec. Registration Sys., Inc. v. Sw. Homes of Ark.*, 2009 Ark. 152, at 5, 301 S.W.3d 1, 4 (internal quotations omitted).  "Under a deed of trust, the borrower conveys legal title in the property by a deed of trust to the trustee." *Id.*, 301 S.W.3d at 4.

[13]  Pl.'s Compl. (Doc. 2) ¶ 5.

[14]  *Id.*

[15]  *Id.*

"financial difficulties."[16]

Around April 2018, Wilson & Associates, on behalf of MidFirst, "executed and filed a Notice of Default and Intention to Sell . . . ."[17]  This notice told Ms. Hunter that she had defaulted on her mortgage and that the Property would be sold at a foreclosure sale on June 11, 2018.[18]  However, the notice did not identify the specific provision of the mortgage that was violated.[19]  Ms. Hunter alleges (among other things) that Midfirst and Wilson & Associates failed to comply with "mandatory provisions of the Arkansas Statutory Foreclosure Act,[20] including notice provisions and the loan modification and forbearance assistance requirements . . . ."[21]

### A.  The Arkansas Foreclosure Act Statutory Scheme

"The Statutory Foreclosure Act establishes a system of nonjudicial foreclosure proceedings as an alternative to judicial foreclosures."[22]  The Arkansas Supreme Court says that the Act "must be strictly construed and complied with."[23]  It is necessary to provide a general overview of the statutory scheme.

Arkansas Code Annotated section 18-50-102 authorizes a trustee to foreclose a deed of trust.  Before doing that, the trustee (Wilson & Associates) and the beneficiary (MidFirst) must provide multiple notices to the grantor (Ms. Hunter).[24]  For example, and highly relevant to this case, at least ten days before initiating a foreclosure, the beneficiary must provide the grantor

---

[16]  *Id.* ¶ 9.

[17]  *Id.* ¶ 6.

[18]  *Id.*; *see also* Ex. A to Pl.'s Compl. (Doc. 2) at 15.

[19]  Pl.'s Compl. (Doc. 2) ¶ 6; *see also* Ex. A to Pl.'s Compl. (Doc. 2) at 15.

[20]  Ark. Code Ann. §§ 18-50-101 to 116.

[21]  Pl.'s Compl. (Doc. 2) ¶ 6.

[22]  *Dickinson v. SunTrust Nat. Mortg. Inc.*, 2014 Ark. 513, at 3, 451 S.W.3d 576, 579.

[23]  *Id.*, 451 S.W.3d at 579.

[24]  *See* Ark. Code Ann. §§ 18-50-103 to 106.

(among other things) "[i]nformation . . . regarding the availability to the grantor . . . of each program for loan modification assistance or forbearance assistance offered" by the beneficiary or a government agency "if the beneficiary . . . participates in the government agency's program . . . ."[25] The beneficiary's obligations with respect to this notice are not delegable to the trustee.[26]

Arkansas Code Annotated section 18-50-104 says that the trustee cannot ultimately sell the property unless three conditions are satisfied.  First, the trustee must file a "notice of default and intention to sell" with the "recorder of the county in which the trust property is located . . . ."[27] The notice must state (among other things) "[t]he default for which foreclosure is made."[28]  The notice must be mailed to the grantor within thirty days of the recording of the notice.[29]  The property can't be sold until sixty days after the notice is filed.[30]  Second, the beneficiary must certify to the trustee that "each . . . grantor . . . who applied for loan modification or forbearance assistance has been notified that the . . . grantor . . . does not meet the criteria for loan modification or forbearance assistance . . . ."[31]  Third, the beneficiary must send notice that the grantor does not meet the criteria to the property address or mailing address of the grantor at least ten days before selling the property.[32]  The beneficiary cannot delegate these certification and notice requirements.[33]

---

[25] *Id.* § 18-50-103(2)(A)(ii)(d).

[26] *Id.* § 18-50-103(2)(C).

[27] *Id.* § 18-50-104(a)(1).

[28] *Id.* § 18-50-104(b)(4).

[29] *Id.* § 18-50-104(c)(1).

[30] *Id.* § 18-50-104(a)(2).

[31] *Id.* § 18-50-104(a)(3)(A)(i)(a).

[32] *Id.* § 18-50-104(a)(3)(A)(ii).

[33] *Id.* § 18-50-104(a)(3)(B).

Arkansas Code Annotated section 18-50-111 explains the form and effect of a trustee's deed.  With respect to form, a trustee's deed "shall contain recitals of compliance with the requirements of [the Act] relating to the exercise of the power of sale and sale of the trust property, including recitals concerning mailing and publication of notice of default and intention to sell and the conduct of the sale."[34]  With respect to effect, "[u]pon the filing of the deed for record with the recorder of the county in which the trust property is situated, the recitals shall be prima facie evidence of the truth of the matters set forth therein, but the recitals shall be conclusive in favor of a purchaser for value in good faith relying upon them."[35]

Arkansas Code Annotated section 18-50-116 says that nothing in the Act "shall be construed to [i]mpair the right of any person or entity to assert his or her legal and equitable rights in a court of competent jurisdiction."[36]  The Act says that a "claim or defense shall be asserted prior to the sale or the claim or defense is forever barred and terminated, except the mortgagor may assert the following against either the mortgagee or trustee: (i) [f]raud by any party; or (ii) [f]ailure to strictly comply with the provisions of [the Act]."[37]  However, "[a]ny of the above claims or defenses may not be asserted against a subsequent purchaser for value of the property."[38]

## B.  Allegations Against MidFirst

Ms. Hunter claims that MidFirst "invalidly" purchased Ms. Hunter's property by Trustee's Deed on June 11, 2018.[39]  Ms. Hunter says that MidFirst, through the Trustee's Deed, "misrepresent[ed] under oath" that MidFirst had complied with all of the Act's statutory notice

---

[34]  *Id.* § 18-50-111(a)(1).

[35]  *Id.* § 18-50-111(a)(2).

[36]  *Id.* § 18-50-116(d)(2)(A).

[37]  *Id.* § 18-50-116(d)(2)(B)(i)–(ii).

[38]  *Id.* § 18-50-116(d)(2)(C).

[39]  Pl.'s Compl. (Doc. 2) ¶ 6.

5

and certification requirements.[40]  The Trustee's Deed was recorded in the Pulaski County property records on June 15, 2018.[41]  Around August 2018, MidFirst purportedly transferred title to the Property to Invest America, LLC.[42]  Invest America conveyed the Property by Warranty Deed to Svetla Sands (a nonparty), who recorded the deed on January 17, 2019.[43]

Ms. Hunter alleges that MidFirst failed to strictly comply with the Act.[44]  Specifically, Ms. Hunter claims that MidFirst: (1) failed to record a Notice of Default and Intention to Sell that identified the "specific default for which foreclosure was being made;"[45] (2) failed to send Ms. Hunter the Notice of Default and Intention to Sell within 30 days of its recording; (3) failed to provide Ms. Hunter with loan modification and forbearance options "that might apply to assist her in maintaining ownership and possession of her home despite her financial difficulties;" (4) failed to certify to Wilson & Associates that Ms. Hunter did not meet the criteria for any available loan modification or forbearance assistance programs; (5) fraudulently misrepresented to Wilson & Associates that Ms. Hunter received notice from MidFirst that Ms. Hunter did not qualify for loan modification or forbearance; (6) failed to notify Ms. Hunter that she did not qualify for loan modification or forbearance assistance at least ten days before the foreclosure sale; (7) conducted the foreclosure sale knowing that MidFirst had not complied with the Act; (8) purchased the Property at the foreclosure sale knowing that MidFirst had not complied with the Act; and (9) filed

---

[40] *Id.* ¶ 9.

[41] *Id.* ¶ 6.

[42] *Id.* ¶ 7.

[43] *Id.*

[44] Pl.'s Compl. (Doc. 2) ¶¶ 12–13, 15–16.

[45] *Id.* ¶ 8.  On May 7, 2020, the Arkansas Supreme Court ruled that the Arkansas Statutory Foreclosure Act requires a notice of default and intention to sell to "state the specific default that occurred."  *Davis v. PennyMac Loan Servs., Inc.*, 2020 Ark. 180, at 8, 599 S.W.3d 128, 133.  Ms. Hunter points to this ruling to allege that the notice Wilson & Associates used (back in 2018) for Ms. Hunter's foreclosure was defective because it did not state the specific event of default.

the Trustee's Deed, which "fraudulently and maliciously misrepresented under oath" that MidFirst had complied with the Act.[46]  Ms. Hunter says these statutory violations "damaged" her.[47]

Ms. Hunter also alleges that MidFirst defrauded her.[48]  According to Ms. Hunter, MidFirst's failures to comply with the Act constituted "intentional, false, and fraudulent conduct of a foreclosure proceeding against [Ms. Hunter]" and "was committed with an intent of clouding or discrediting [Ms. Hunter's] title and interest to the property . . . ."[49]  Specifically, according to the Complaint, MidFirst "falsely represented to [Ms. Hunter] that her Property was subject to foreclosure and could be sold even though MidFirst [] knew it had not complied with the requirements of the Act . . . ."[50]  The Complaint also alleges that MidFirst "knowingly misrepresented to [Ms. Hunter] . . . in the false Trustee's Deed that [MidFirst] had complied with the requirements of the Act . . . and was therefore entitled to ownership and possession of the property."[51]  MidFirst allegedly made these various misrepresentations to induce Ms. Hunter to pay MidFirst's "various fees and penalties sought in the foreclosure action."[52]  MidFirst also allegedly made the misrepresentations so that it could purchase the Property and deprive her of her rights in the Property.[53]

Ms. Hunter says that she justifiably relied on MidFirst's alleged misrepresentations because MidFirst "was in a superior position to know and understand the issues surrounding the terms of the mortgage and the foreclosure proceedings" and because MidFirst was "in fact making

---

[46] Pl.'s Compl. (Doc. 2) ¶¶ 9, 12.

[47] *Id.* ¶ 13.

[48] *Id.* ¶ 16.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

its representations under oath."[54]   Ms. Hunter briefly alleges that she has been "damaged" as a result of the above acts by MidFirst.[55]

Ms. Hunter also seeks damages against MidFirst for violations of Arkansas Code Annotated section 5-37-226.  That statute provides in part:

> (a) It is unlawful for a person with the knowledge of the instrument's lack of authenticity or genuineness to have placed of record in the office of the county recorder or the office of the Secretary of State any instrument:
>
> (1) Clouding or adversely affecting:
>
> (A) The title or interest of the true owner, lessee, or assignee in real property; or
>
> (B) Any bona fide interest in real property; and
>
> (2) With the purpose of:
>
> (A) Clouding, adversely affecting, impairing, or discrediting the title or other interest in the real property which may prevent the true owner, lessee, or assignee from disposing of the real property or transferring or granting any interest in the real property . . . .[56]

"A person who violates subsection (a) of this section is guilty of a Class A misdemeanor."[57]   A second violation of this statute can result in a felony conviction.[58]   And "[a]n owner . . . of real property . . . who suffers loss or damages as a result of conduct" prohibited under this statute and "who must bring civil action to remove any cloud from his or her title or interest in the real property or to clear his or her title or interest in the real property is entitled to three (3) times actual damages, punitive damages, and costs, including any reasonable attorney's fees or other costs of litigation

---

[54] *Id.*

[55] *Id.*

[56] Ark. Code Ann. § 5-37-226(a).

[57] *Id.* § 5-37-226(b)(1)(A).

[58] *Id.* § 5-37-226(b)(1)(B).

reasonably incurred."[59]

Ms. Hunter's factual allegations regarding fraud undergird her claim with respect to Arkansas Code Annotated section 5-37-226. Ms. Hunter alleges that MidFirst's fraudulent acts with respect to the foreclosure proceeding were "committed with the intent of clouding or discrediting her title and interest to the Property . . . ."[60] Ms. Hunter says that these fraudulent acts culminated in the "filing of a knowingly false Trustee's Deed that purported to convey the Property to Midfirst [] and thereby clouded or otherwise adversely affected [Ms. Hunter's] title or interest."[61]

Ms. Hunter's Complaint also mentions other potential causes of action against MidFirst.[62] For instance, Ms. Hunter alleges that MidFirst violated the Arkansas Deceptive Trade Practices Act ("ADTPA").[63]

Ms. Hunter makes multiple damages allegations. Ms. Hunter says that MidFirst's "unlawful conduct caused harm to [Ms. Hunter] for which she is entitled to both compensatory and punitive damages from MidFirst . . . ."[64] Respecting MidFirst's alleged violations of the Act, Ms. Hunter says she "has been damaged and is entitled to the relief more fully set forth below."[65] Ms. Hunter says the same exact thing with respect to her claims based on fraud and violations of

---

[59] *Id.* § 5-37-226(c).

[60] Pl.'s Compl. (Doc. 2) ¶¶ 15–16.

[61] *Id.*

[62] *Id.* ¶ 23.

[63] *Id.*; *see also* Ark. Code Ann. §§ 4-88-101 to 117. Ms. Hunter alleges that Wilson & Associates violated the ADTPA as well. Pl.'s Compl. (Doc. 2) ¶ 16. She also says that MidFirst's conduct "is actionable under the common law torts of (1) slander of title, (2) outrage, and (3) abuse of process." *Id.* ¶ 23. Ms. Hunter also alleges that Wilson & Associates is similarly liable for the same torts. *Id.* However, in a subsequent filing, Ms. Hunter concedes that her Complaint does not sufficiently state a cause of action for these torts. Pl.'s Resp. to MidFirst's Mot. to Dismiss (Doc. 20) at 2. These tort claims are out.

[64] Pl.'s Compl. ¶ 10.

[65] *Id.* ¶ 13.

Arkansas Code Annotated section 5-37-226.[66]

In the section of the Complaint titled Damages and Relief, Ms. Hunter alleges that, due to the acts and omissions of MidFirst, she "has sustained damages . . . ."[67]  In terms of relief, Ms. Hunter wants the Trustee's Deed declared void and set aside.[68]  She also requests "compensatory damages for the harm she has suffered," including "the fair market value of her Property, loss of rents/profits, embarrassment, humiliation, damage to her reputation, mental anguish, emotional distress, attorney's fees, court costs, and interest both pre-judgment and post-judgment."[69]  Ms. Hunter seeks "treble the amount of the above compensatory damages" pursuant to Arkansas Code Annotated section 5-37-226.[70]  Finally, Ms. Hunter alleges that MidFirst's conduct warrants punitive damages.[71]

### C.  Allegations Against Wilson & Associates

Ms. Hunter's claims against Wilson & Associates largely overlap with her claims against MidFirst.  Ms. Hunter alleges that Wilson & Associates, acting as MidFirst's attorney-in-fact, violated the Act in a number of ways, including by (1) preparing the Notice of Default and Intention to Sell without identifying the specific default underlying the foreclosure; (2) failing to send the Notice of Default and Intention to Sell to Ms. Hunter within 30 days of its recording; (3) failing to provide Ms. Hunter with loan modification information; (4) conducting the foreclosure sale and facilitating the purchase of the Property knowing that Wilson & Associates had not complied with the Act; and (5) filing the Trustee's Deed, "which fraudulently and maliciously

---

[66]  *Id.* ¶ 16.

[67]  *Id.* ¶ 24.  Ms. Hunter's prayer for relief applies equally to Wilson & Associates.

[68]  *Id.* ¶ 24(a).

[69]  *Id.* ¶ 24(b).

[70]  *Id.* ¶ 24(c).

[71]  *Id.* ¶¶ 6, 24(d).

misrepresented under oath that MidFirst [] and/or Wilson & Associates had complied with the [Act's] statutory requirements and which purported to deprive [Ms. Hunter] of her title to the Property."[72]

Ms. Hunter says that Wilson & Associates fraudulently conducted the foreclosure on the Property.[73]  Specifically, Ms. Hunter alleges that Wilson & Associates's failure to comply with the Act

> constituted intentional, false, and fraudulent conduct of a foreclosure proceeding against [Ms. Hunter], all of which was committed with the intent of clouding or discrediting her title and interest to the Property, and which resulted in the filing of a knowingly false Trustee's Deed that purported to convey the Property to MidFirst [] and thereby clouded or otherwise adversely affected [Ms. Hunter's] title or interest.[74]

Ms. Hunter also says that Wilson & Associates falsely represented to Ms. Hunter that her Property was subject to foreclosure even though Wilson & Associates knew that it had not complied with the Act.[75]  Wilson & Associates, according to Ms. Hunter, "knowingly misrepresented to [Ms. Hunter] and others in the false Trustee's Deed that [Wilson & Associates] had complied with the requirements of the Act . . . and was therefore entitled to ownership and possession of the Property."[76]  Ms. Hunter contends that Wilson & Associates made these representations to purchase Ms. Hunter's Property and deprive her of her ownership rights.[77]  Ms. Hunter says she "justifiably relied on these misrepresentations" because "Wilson & Associates was in a superior position to know and understand the issues surrounding the terms of the mortgage and the

---

[72] *Id.* ¶¶ 17–19.

[73] *Id.*

[74] *Id.* ¶ 21.

[75] *Id.*

[76] *Id.*

[77] *Id.*

foreclosure proceedings . . . ."[78]   Finally, Ms. Hunter briefly alleges that she was damaged by Wilson & Associates.[79]

Additionally, Ms. Hunter points to Wilson & Associates's alleged fraudulent activity to make a claim under Arkansas Code Annotated section 5-37-226 (discussed above).[80]   Ms. Hunter says that Wilson & Associates fraudulently conducted the foreclosure proceeding "with the intent of clouding or discrediting her title and interest to the Property, and which resulted in the filing of a knowingly false Trustee's Deed that purported to convey the Property to MidFirst [] and thereby clouded or otherwise adversely affected [Ms. Hunter's] title or interest."[81]

### D.  Remand and Motions to Dismiss

On May 5, 2021, MidFirst timely filed its Notice of Removal.[82]   MidFirst based its removal on 28 U.S.C. § 1332 (diversity jurisdiction).[83]   MidFirst knows that Wilson & Associates is not diverse from Ms. Hunter.   But MidFirst argues that Ms. Hunter fraudulently joined Wilson & Associates, and thus this Court can ignore Wilson & Associates's presence for the purposes of the diversity jurisdiction statute.[84]   Ms. Hunter disagrees.[85]   Additionally, MidFirst and Wilson & Associates have filed separate Motions to Dismiss, which Ms. Hunter opposes.[86]

---

[78]  *Id.*

[79]  *Id.*

[80]  *Id.* ¶¶ 20–21.

[81]  *Id.* ¶ 21.

[82]  Def.'s Notice of Removal (Doc. 1).  Ms. Hunter filed the Complaint on April 2, 2021.  Pl.'s Compl. (Doc. 2). According to a service affidavit in the record, MidFirst was served on April 23, 2021.  MidFirst's Aff. of Service (Doc. 7).  Under 28 U.S.C. § 1446(b)(1), a notice of removal must be filed within 30 days of service of the complaint.  MidFirst complied with that statute.  Given that Ms. Hunter does not argue otherwise, the Court concludes that MidFirst's removal was timely.

[83]  Def.'s Notice of Removal (Doc. 1) at 2.

[84]  *Id.* at 2–3.

[85]  Pl.'s Mot. to Remand (Doc. 14) at 2.

[86]  MidFirst's Mot. to Dismiss (Doc. 12); Wilson & Associates's Mot. to Dismiss (Doc. 8); Pl.'s Resp. to MidFirst's Mot. to Dismiss (Doc. 20); Pl.'s Resp. to Wilson & Associates's Mot. to Dismiss (Doc. 16).

**Legal Discussion**

Because Ms. Hunter's Motion to Remand raises doubts as to the Court's subject matter jurisdiction, the Court will address that issue first.  Because the Court concludes that it has subject matter jurisdiction, the Court then turns to MidFirst's Motion to Dismiss.

### A.  Motion to Remand

28 U.S.C. § 1332(a)(1) confers subject matter jurisdiction on this Court in civil actions between citizens of different states when the amount in controversy exceeds $75,000.  Ms. Hunter concedes (and the Court concludes) that the amount in controversy exceeds $75,000.[87]  So MidFirst's removal was proper if diversity existed between the parties at the time the Complaint was filed and at the time of removal.[88]

MidFirst (a Defendant) is an Oklahoma citizen.  Wilson & Associates (a Defendant) and Ms. Hunter (the Plaintiff) are Arkansas citizens.  On the face of the Complaint, complete diversity is lacking between the parties.  To get around this obvious hurdle, MidFirst argues that the Court should ignore Wilson & Associates for diversity purposes because the law firm has been fraudulently joined.[89]  As the Eighth Circuit has explained, a plaintiff cannot defeat diversity jurisdiction "by fraudulently joining a defendant who has 'no real connection with the controversy.'"[90]  Thus, a defendant can remove an otherwise eligible case if that defendant can show that the non-diverse defendant was fraudulently joined.[91]

In *Filla v. Norfolk Southern Railway Co.*, the Eighth Circuit explained that "joinder is

---

[87]  Pl.'s Mot. to Remand (Doc. 14) at 4 n.2.

[88]  *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011) ("In the case of a removed action, diversity of citizenship must exist both when the state petition is filed and when the petition for removal is filed." (brackets omitted) (quoting *Ryan ex rel. Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001))).

[89]  Def.'s Notice of Removal (Doc. 1) at 2–3.

[90]  *Knudson*, 634 F.3d at 976 (quoting *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)).

[91]  *Id.*

fraudulent when there exists no reasonable basis in fact and law supporting a claim against" a diversity-destroying defendant.[92]  This rule is easier to state than it is to apply.[93]  Still, the Eighth Circuit has provided some helpful guideposts.

For example, the Eighth Circuit says that the Federal Rule of Civil Procedure 12(b)(6) standard and the fraudulent joinder standard are different, "with Rule 12(b)(6) being more demanding" of a plaintiff.[94]

> Under the *Filla* standard the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.  In contrast, to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[95]

The Eighth Circuit has juxtaposed two situations: (1) where "'it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant'"[96] and (2) where "there is a 'colorable' cause of action—that is, [where] the state law *might* impose liability on the resident defendant under the facts alleged."[97]  The former situation constitutes fraudulent joinder; the latter does not.[98]  The Eighth Circuit appears to define "colorable" as "describ[ing] an alleged cause of action that is reasonable, but speculative."[99]  All this leads to the conclusion that the fraudulent joinder trigger lies somewhere between the Rule 12(b)(6) standard and the Rule 11 standard—probably closer to the Rule 11 standard.[100]

---

[92] 336 F.3d 806, 810 (8th Cir. 2003) (quoting *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)).

[93] *Id.* at 809 ("While fraudulent joinder—the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal—is rather easily defined, it is much more difficulty applied.").

[94] *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (2010).

[95] *Id.* (cleaned up).

[96] *Filla*, 336 F.3d at 810 (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)).

[97] *Id.*

[98] *Id.*

[99] *Id.* at 810 n.10.

[100] *See* Fed. R. Civ. P. 11(b)(2) (requiring "the claims" to be "warranted by existing law or by a nonfrivolous argument

Two further points are worth noting before jumping into the analysis of the claims brought against Wilson & Associates in the case at bar.  First, MidFirst removed the case and thus bears the burden of establishing that Ms. Hunter fraudulently joined Wilson & Associates.[101]  Second, "[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court."[102]  That's why the Eighth Circuit directs remand if there is even "'arguably a reasonable basis for predicting that the state law might impose liability . . . .'"[103]  It's also why the Eighth Circuit dictates that, "[i]n making such a prediction, the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor."[104]

Here, MidFirst principally argues that Wilson & Associates is statutorily immune "to the majority of [Ms. Hunter's] claims because [Wilson & Associates] is not in privity with Ms. Hunter."[105]  Except for "[a]cts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations," Arkansas Code Annotated section 16-22-310 provides that law firms cannot be held liable to "persons not in privity of contract with the [law firm] . . . for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed" by the law firm.[106]  Indeed, the immunity statute specifically states that "the appointment of an attorney as a successor trustee or attorney-in-fact as provided in" the Arkansas Statutory Foreclosure Act "shall not expand the liability of" a law firm.[107]

---

for extending, modifying, or reversing existing law or for establishing new law").

[101] *See In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010) ("The defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence.").

[102] *Id.*

[103] *Knudson*, 634 F.3d at 980 (quoting *Filla*, 336 F.3d at 811).

[104] *Filla*, 336 F.3d at 811.

[105] Def.'s Notice of Removal (Doc. 1) at 3–4.

[106] Ark. Code Ann. §§ 16-22-310(a), 16-22-310(a)(1).  There are other exceptions that everyone agrees are not relevant here.

[107] *Id.* § 16-22-301(c).

Ms. Hunter does not quarrel with the idea that Wilson & Associates is generally immune to suits by non-clients under the statute.  Instead, Ms. Hunter's sole argument in favor of remand is that "there is a reasonable basis in fact and law supporting her claims for fraud and misrepresentation against Wilson & Associates . . . ."[108]  As such, Ms. Hunter argues that the fraud and intentional misrepresentations exception to the immunity statute applies.[109]  But there are a few problems with Ms. Hunter's position.  Most problematically, Ms. Hunter does not bring a standalone fraud, deceit, or intentional misrepresentation claim against Wilson & Associates.  In *Ricetec, Inc. v. Cook*, this Court explained that "[t]he exception for 'acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations' is a description of one particular intentional tort claim in Arkansas law—the intentional tort of fraud, deceit, or misrepresentation."[110]

It is true that Ms. Hunter embeds fraud terminology in her Complaint.  Recall, for example, that Ms. Hunter alleges that Wilson & Associates's failures to comply with the Act "constituted intentional, false, and fraudulent conduct of a foreclosure proceeding," which culminated "in the filing of a knowingly false Trustee's Deed . . . ."[111]  Ms. Hunter argues that the statutory exception for fraud or intentional misrepresentations applies more broadly than just to the specific tort of fraud, deceit, or misrepresentation.[112]  She suggests that the exception allows other claims to

---

[108] Pl.'s Mot. to Remand (Doc. 14) at 2.

[109] *See id.* at 3.

[110] Case No. 2:20-cv-00056-LPR, 2020 WL 7360479, at *6, (E.D. Ark. Dec. 15, 2020) (citing *Calandro v. Parkerson*, 327 Ark. 131, 137–38, 936 S.W.2d 755, 759 (1997)).  The Arkansas Supreme Court strongly suggests that intentional misrepresentation is a concept interchangeable with fraud or deceit.  *See, e.g.*, *S. Cnty., Inc. v. First W. Loan Co.*, 315 Ark. 722, 725, 871 S.W.2d 325, 326 (1993) ("Misrepresentation, also commonly referred to as deceit or fraud, has been an intentional tort in Arkansas for well over a century.") (emphasis removed).  The Court will analyze the fraudulent joinder issue through the lens of the Arkansas fraud elements.

[111] Pl.'s Compl. (Doc. 2) ¶ 21.

[112] Pl.'s Mot. to Remand (Doc. 14) at 4.

proceed so long as some or all of the conduct that undergirds the claims was fraudulent or constituted intentional misrepresentations.[113]  The Court disagrees.

Ms. Hunter seeks aid and comfort for her position from a 1992 district court case out of the Western District of Arkansas, *Almand v. Benton County, Arkansas*.[114]  Respectfully, the Court is not persuaded that *Almand* correctly predicts how the Arkansas Supreme Court would interpret Arkansas Code Annotated section 16-22-310(a)(1) today.  Arkansas Supreme Court cases that have been decided since 1992 have declined to adopt *Almand*.[115]  Although the Arkansas Supreme Court has not squarely rejected the reasoning and result in *Almand*, I predict that the Arkansas Supreme Court would do so if directly confronted with the question.  *Almand* was of a different time, prioritizing legislative history over statutory text.  The Arkansas Supreme Court is correctly much more focused on interpreting statutory text than divining legislative intent by use of legislative history and purpose.[116]

So what does the statutory text say?  As mentioned, the immunity statute excepts "[a]cts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations . . . ."[117]  Let's start with the word "constitutes."  That word means "[t]o make up or form."[118]  Applying this definition, the exception applies to acts or omissions making up fraud or intentional

---

[113] *Id.*

[114] 145 B.R. 608 (W.D. Ark. 1992).

[115] *See Kimbro Stephens Ins. Tr. v. Smith*, 2021 Ark. App. 127, at 19–20 (collecting cases and noting that the Arkansas Supreme Court has not adopted the holding in *Almand*).

[116] The Arkansas Supreme Court construes a "statute just as it reads giving the words their ordinary and usually accepted meaning in common language."  *First Ark. Bank & Trust, Tr. v. Gill Elrod Ragon Owen & Sherman*, 2013 Ark. 159, at 9, 427 S.W.3d 47, 53 (internal quotations omitted) (quoting *McDonald v. Pettus*, 337 Ark. 265, 271–72, 988 S.W.2d 9, 12 (1999)).

[117] Ark. Code Ann. § 16-22-310(a)(1).

[118] *Constitute, Black's Law Dictionary* (11th ed. 2019).

misrepresentations.  The question then becomes, what is meant by the statutory term fraud or intentional misrepresentations.

The Arkansas Supreme Court has made clear that, "[i]n a statute using a word, the meaning of which is well known, and which has a definite sense at common law, the word will be restricted to that sense."[119]  This principle applies to terms of art just as it applies to words.[120]  The term fraud or intentional misrepresentations has a well-accepted meaning under Arkansas common law. The Arkansas Supreme Court has indicated that fraud and intentional misrepresentation embrace a single intentional tort in Arkansas—deceit, fraud, or intentional misrepresentation.[121]  As such, the exception carves out claims for the singular tort of deceit, fraud, or intentional misrepresentation.

Ms. Hunter's claim against Wilson & Associates is titled Statutory Violations.  She makes no claim for fraud or intentional misrepresentations.  The immunity statute thus immunizes Wilson & Associates in this action.  In other words, Ms. Hunter cannot (and does not even expressly attempt to) make a colorable claim against Wilson & Associates.  Accordingly, the naming of Wilson & Associates as a defendant in this action constitutes fraudulent joinder.

Even giving Ms. Hunter the benefit of the doubt and somehow construing her Complaint to raise a cause of action for fraud, intentional misrepresentation, or deceit against Wilson &

---

[119] *Fort v. Brinkley*, 87 Ark. 400, 112 S.W. 1084, 1084 (Ark. 1908).

[120] *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 73 (2012). "Sometimes context indicates that a technical meaning applies.  Every field of serious endeavor develops its own nomenclature—sometimes referred to as *terms of art*.  Where the text is addressing a scientific or technical subject, a specialized meaning is to be expected: In terms of art which are above the comprehension of the general bulk of mankind, recourse, for explanation, must be had to those, who are more experienced in that art.  And when the law is the subject, ordinary legal meaning is to be expected, which often differs from common meaning.  As Justice Frankfurter eloquently expressed it; '[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.'"  *Id.* (internal quotations omitted) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. REV. 527, 537 (1947)).

[121] *See S. Cnty.*, 315 Ark. at 726, 871 S.W.2d at 327 (explaining that "[m]isrepresentation, also commonly referred to as deceit or fraud, has been an *intentional* tort in Arkansas for well over a century" (emphasis in original)).

Associates, Ms. Hunter has still fraudulently joined Wilson & Associates.  Fraud has five elements under Arkansas law:

> (1) that the defendant made a false representation of material fact; (2) that the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) that the defendant intended to induce action or inaction by the plaintiff in reliance upon the representation; (4) that the plaintiff justifiably relied on the representation; and (5) that the plaintiff suffered damage as a result of the false representation.[122]

MidFirst argues that Ms. Hunter's Complaint fails to present a colorable claim for fraud.[123] In response, Ms. Hunter directs the Court to multiple "facts" in the Complaint she believes are sufficient to pass muster.  Even in combination, these facts do not raise a colorable fraud claim for one pretty glaring reason; Ms. Hunter does not allege any "facts" relating to justifiable reliance.

In her Motion to Remand, Ms. Hunter points to the following as sufficient to raise a colorable fraud claim:

- (a) Wilson & Associates falsely represented to Plaintiff that her property was subject to foreclosure and could be sold;

- (b) Wilson & Associates falsely represented to Plaintiff that it had complied with the provisions of the Arkansas Statutory Foreclosure Act ("the Act") when in fact, it failed to comply with the notice and the loan forbearance and/or modification provisions;

- (c) Wilson & Associates knowingly misrepresented to Plaintiff and others that its compliance with the Act entitled MidFirst to ownership and possession of the property;

- (d) Wilson & Associates made these false representations for the purpose of clouding title to the property and inducing Plaintiff not to contest the foreclosure action;

---

[122] *First Ark. Bank*, 2013 Ark. 159, at 9–10, 427 S.W.3d at 53–54.  It should be noted that the Arkansas Rules of Civil Procedure set a higher pleading standard for fraud claims.  Rule 9(b) provides in part that, "[i]n all averments of fraud, . . . the circumstances constituting fraud, . . . shall be stated with particularity."  On the other hand, "[m]alice, intent, knowledge and other conditions of mind of a person may be averred generally."  Ark. R. Civ. P. 9(b).  The Arkansas Supreme Court has said that a well pleaded complaint "must state something more than mere conclusions and must clearly set forth the facts relied upon as constituting fraud."  *Woodend v. Southland Racing Corp.*, 337 Ark. 380, 385, 989 S.W.2d 505, 507–08 (1999).  While the exact weight this heightened pleading standard deserves in the fraudulent joinder analysis is hard to quantify, the standard does at least suggest that fraud claims deserve a little bit of a harder look when determining whether state law might impose liability.

[123] Def.'s Notice of Removal (Doc. 1) at 5–6.

- (e) Plaintiff justifiably relied upon these intentional, false and fraudulent representations because Wilson & Associates was in a superior position to know and understand the issues surrounding the terms of the mortgage and the foreclosure proceedings and the misrepresentations were made under oath;

- (f) Plaintiff sustained damages.[124]

The Court assumes arguendo that Ms. Hunter has adequately pleaded that Wilson & Associates knowingly made a false representation of material fact with the purpose of inducing Ms. Hunter to action or inaction (the first three fraud elements). Still, Ms. Hunter does not present a colorable fraud claim. Ms. Hunter's invocation of the words "justifiable reliance" are entirely conclusory and are not enough here. Not one time in her Complaint does Ms. Hunter say what she actually did (or did not do) in reliance of any of the foregoing alleged false representations. Did she throw her hands up in defeat when she would have otherwise fought the foreclosure sale? Did the alleged false representations cause Ms. Hunter to believe that she was in default when she wasn't? The Complaint doesn't say. Without some indication (and alleged facts) of an action or omission on Ms. Hunter's part, Ms. Hunter cannot state a colorable fraud claim.[125] Without a colorable fraud claim, Wilson & Associates is statutorily immune to suit here.

In sum, Wilson & Associates was fraudulently joined.[126] Wilson & Associates is therefore

---

[124] Pl.'s Mot. to Remand (Doc. 14) at 5.

[125] Ms. Hunter also fails to allege sufficient facts regarding damages. She says she was damaged, nothing more. That conclusion provides no reasonable basis in law and fact to establish the damages element required for fraud.

[126] Ms. Hunter's other claims against Wilson & Associates have no reasonable basis in law and fact. Ms. Hunter concedes that she does not present a colorable claim for abuse of process. Pl.'s Mot. to Remand (Doc. 14) n.2. Respecting slander of title, Arkansas law says that this tort is "an action based on malicious publication of a false matter that disparages the title to property." *Fleming v. Cox Law Firm*, 363 Ark. 17, 20, 210 S.W.3d 866, 868 (2005). In the absence of fraud or intentional misrepresentation, an attorney not in privity with the plaintiff is immune to suit for slander of title. *Id.* at 21, 210 S.W.3d at 868. The Court has already concluded that Ms. Hunter does not make a colorable claim for fraud, and thus her slander-of-title claim is barred by the immunity statute. Respecting outrage, under Arkansas law, the tort of outrage requires proof of the following elements: "(1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community;' (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it." *McQuay v. Guntharp*, 331 Ark. 466, 470, 969 S.W.3d 583, 585 (1998) (internal quotations

dismissed without prejudice from this case.[127]

### B. MidFirst's Motion to Dismiss

Having determined that diversity jurisdiction exists, the Court turns to MidFirst's Motion to Dismiss. In a diversity suit, this Court applies "federal pleading standards . . . to the state substantive law to determine if a complaint makes out a claim under state law."[128] When a complaint "fail[s] to state a claim upon which relief can be granted," it is subject to dismissal.[129] To survive dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[130] "Factual allegations are taken to be true at the motion-to-dismiss stage because the plaintiff has not had a full opportunity to conduct discovery and thereby uncover facts that support his or her claim."[131] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[132]

Ms. Hunter has helpfully cleared some of the underbrush for the Court. She "concedes that her complaint does not set forth an independent cause of action for slander of title, outrage, and

---

omitted). The Arkansas Supreme Court "gives a narrow view to the tort of outrage." *Crockett v. Essex*, 341 Ark. 558, 564, 945 S.W.3d 586, 589 (2000). In no way could the most gracious reading of Ms. Hunter's Complaint yield a colorable claim for outrage. In any event, Ms. Hunter concedes that her Complaint does not state viable causes of action for slander of title, outrage, or abuse of process. Pl.'s Resp. to MidFirst's Mot. to Dismiss (Doc. 20) at 2. Finally, respecting alleged violations of the Arkansas Deceptive Trade Practices Act, the Arkansas Supreme Court has "unequivocally said that 'the [Arkansas Deceptive Trade Practices Act] does not apply to the practice of law." *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, at 14, 372 S.W.3d 324, 334 (quoting *Preston v. Stoops*, 373 Ark. 591, 594, 285 S.W.3d 606, 609 (2008)).

[127] Wilson & Associates's separate Motion to Dismiss is moot because Wilson and Associates's dismissal is automatic given the Court's fraudulent joinder finding.

[128] *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013).

[129] Fed. R. Civ. P. 12(b)(6).

[130] *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[131] *Ashley v. U.S. Dep't of Interior*, 408 F.3d 997, 1000 (8th Cir. 2005).

[132] *Iqbal*, 556 U.S. at 678.

abuse of process."[133]   Nevertheless, the Court still has plenty of ground to plow.  Ms. Hunter maintains that she has stated claims against MidFirst for (1) violations of the Arkansas Statutory Foreclosure Act (the "Act"), (2) fraud, (3) violations of Arkansas Code Annotated section 5-22-367, and (4) violations of the Arkansas Deceptive Trade Practices Act.[134]   The Court addresses each claim in turn.

### A.  Violations of the Arkansas Statutory Foreclosure Act

Viewing the allegations in the Complaint as true, Ms. Hunter plausibly establishes that MidFirst failed to strictly comply with multiple provisions of the Act.[135]   First, the Act requires a Notice of Default and Intention to Sell to state "the default for which foreclosure is made."[136]   The Arkansas Supreme Court recently (and unsurprisingly) held that this provision means that a "notice must state the specific default that occurred."[137]   MidFirst's Notice of Default and Intention to Sell said that "default has been made with respect to a provision in the mortgage . . . ."[138]   The Notice did not specifically state what default occurred, and thus Ms. Hunter plausibly alleges a violation of this provision.  MidFirst does not put up a fight on this point.

Second, the Act required MidFirst to (1) tell Ms. Hunter of available programs related to loan modification and forbearance assistance and (2) certify to Wilson & Associates that Ms. Hunter had applied for and was not qualified for loan modification or forbearance assistance.[139]   Ms. Hunter alleges that MidFirst did not provide notice of loan modification or forbearance

---

[133] *See supra* note 63; Pl.'s Resp. to MidFirst's Mot. to Dismiss (Doc. 20) at 2.

[134] Pl.'s Resp. to MidFirst's Mot. to Dismiss (Doc. 20) at 2.

[135] The Court assumes for the sake of this Order that the Act provides a private cause of action.

[136] Ark. Code Ann. § 18-50-104(b)(4).

[137] *Pennymac*, 2020 Ark. 180, at 8, 599 S.W.3d at 133.

[138] Ex. A to Pl.'s Compl. (Doc. 2) at 15.

[139] Ark. Code Ann. §§ 18-50-103(2), 18-50-104(3)(a)(i).

assistance programs.  Ms. Hunter alleges that MidFirst did not certify to Wilson & Associates that Ms. Hunter applied for and was not qualified for loan modification or forbearance assistance. Alternatively, Ms. Hunter alleges that MidFirst fraudulently certified that such was the case.  These factual allegations, too, plausibly make out statutory violations of the Act by MidFirst.

But there's a potential problem for Ms. Hunter.  Bare statutory violations are not enough to state a claim.  MidFirst argues that Ms. Hunter fails to connect the alleged violations to her damages.[140]  MidFirst is right.

The Act is silent on monetary recovery.  There's no provision, for example, setting some statutory damages amount.  Indeed, the Act does not set out any remedy for statutory violations. In her Complaint, Ms. Hunter says she "has been damaged" multiple times.  That's about it.  And that's a conclusory statement.  There's no specific factual allegation on the damages issue.  Ms. Hunter has not alleged **facts** that plausibly establish any entitlement to compensation.

Perhaps recognizing this deficiency, Ms. Hunter tries to bolster her damages theory through her briefing.  She says that MidFirst's "failure to provide her with information regarding loan modification and forbearance assistance denied her the opportunity to take advantage of this assistance."[141]  That's not in her Complaint.  In fact, it arguably contradicts her Complaint, in which she alleged that she requested from MidFirst "modification or suspension of her payments or other assistance in keeping her home . . . ."[142]  So on one hand, Ms. Hunter says MidFirst denied her requests for modification or forbearance assistance.  On the other, Ms. Hunter says MidFirst "denied her the opportunity" to seek modification or forbearance assistance.  Both can't be true, and thus Ms. Hunter's new brief-based assertion does not help her here.

---

[140] Br. in Supp. of MidFirst's Mot. to Dismiss (Doc. 13) at 4.

[141] Br. in Supp. of Pl.'s Resp. to MidFirst's Mot. to Dismiss (Doc. 21) at 9.

[142] Pl.'s Compl. (Doc. 2) ¶ 9.

Ms. Hunter also argues in her brief that "[i]f she had qualified for the assistance programs, the foreclosure would have never taken place."[143]  And she says that "[i]f Midfirst Bank had not acted fraudulently in the context of the foreclosure sale, [she] would have been able to contest the validity of the sale."[144]  These speculative assertions are not in the Complaint either.  To be sure, Ms. Hunter says what she wants in the way of compensatory damages (e.g., the full market value of the Property).  But nothing in Ms. Hunter's Complaint alleges a specific factual basis for monetary damages in this case.  Without some factual elucidation of damages, Ms. Hunter's Complaint fails to state a claim under the Act.

There's one more point that warrants discussion.  Recall that, in addition to monetary damages, Ms. Hunter seeks equitable relief—specifically, the setting aside of the Trustee's Deed. But Ms. Hunter does not say how the invalidation of the Trustee's Deed would benefit her.  Wilson & Associates, as trustee, conveyed the Property to MidFirst via the Trustee's Deed.  MidFirst then conveyed the Property to another entity, Invest America, who then conveyed it to Svetla Sands by Warranty Deed.[145]  The Svetla Sands deed was recorded on January 17, 2019.[146]  Ms. Hunter alleges nothing to suggest the Court can turn back time and give Ms. Hunter possession of the Property.  Indeed, the recitals in a trustee's deed (true or not) are "conclusive in favor of a purchaser for value in good faith relying upon them."[147]  Ms. Hunter doesn't say that Svetla Sands is not a purchaser for value.  This means that Ms. Hunter cannot look to the allegedly false recitals in the Trustee's Deed as a vehicle to challenge the current owner's interest in the Property.  Ms. Hunter

---

[143] Br. in Supp. of Pl.'s Resp. to MidFirst's Mot. to Dismiss (Doc. 21) at 9.

[144] *Id.*

[145] Pl.'s Compl. (Doc 2) ¶ 7.

[146] *Id.*

[147] Ark. Code Ann. § 18-50-111(a)(2).

also cannot use MidFirst's failure to strictly comply with the Act as a vehicle to collaterally attack the current owner's interest.  This is because the Act specifically bars any claims or defenses against "a subsequent purchaser for value of the property."[148]

All this to say, even if the Court were to invalidate the Trustee's Deed, Ms. Hunter's victory would be hollow because Ms. Hunter does not allege what good, if any, setting aside the Trustee's Deed would do for her.  Ms. Hunter thus can't look to this equitable relief to state a claim under the Act.

### B. Fraud

Much of what was said with respect to Ms. Hunter's fraud claims against Wilson & Associates applies with equal force here.  Additionally, Rule 9 of the Federal Rules of Civil Procedure requires a plaintiff to plead fraud with particularity.  For claims of fraud, "a party must state with particularity the circumstances constituting fraud . . . ."[149]  The Eighth Circuit explains that "Rule 9(b) requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'"[150] Ms. Hunter doesn't do this.

The Court again assumes arguendo that Ms. Hunter sufficiently alleges the first three fraud elements (a false representation of material fact with intent to induce action or inaction).  Ms. Hunter still fails to plausibly allege fraud because she presents no facts (specific or not) indicating that she changed her position based on MidFirst's alleged false representations.  So there's no viable allegation of justifiable reliance.  Ms. Hunter says she "justifiably relied on these misrepresentations by MidFirst [], as MidFirst [] was in a superior position to know and understand

---

[148] *Id.* § 18-50-116(d)(2)(C).

[149] Fed. R. Civ. P. 9(b).

[150] *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (quoting *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir.2007)).

the issues surrounding the terms of the mortgage and the foreclosure proceedings, and MidFirst []
was in fact making its misrepresentations under oath."[151]  If this sounds familiar, that's because
this is the same general allegation (legal conclusion) that Ms. Hunter made with respect to Wilson
& Associates.  It is similarly deficient with respect to MidFirst for the same reasons discussed in
the fraudulent joinder section.  Ms. Hunter does not say anything about what she did or didn't do
in reliance on MidFirst's alleged misrepresentations.  In her brief opposing MidFirst's dismissal
motion, Ms. Hunter does say that she didn't contest the foreclosure because of the false
representations.[152]  But this allegation does not appear in the Complaint.  Ms. Hunter cannot use
motion briefs to amend her Complaint.

Even if the Court were to accept this late allegation, Ms. Hunter still fails to state a claim
for fraud.  She makes no factual allegations explaining how, exactly, she was damaged by the
alleged misrepresentations.  She just says she was damaged.  Ms. Hunter's "formulaic recitation
of the elements of [fraud] will not do."[153]

### C.  Violations of Arkansas Code Annotated Section 5-37-226

Ms. Hunter also asserts a right to damages under Arkansas Code Annotated section 5-37-
226.  This is a criminal statute.  With some exceptions, a person who violates this statute is guilty

---

[151] Pl.'s Compl. (Doc. 2) ¶ 16.

[152] Br. in Supp. of Pl.'s Resp. to MidFirst's Mot. to Dismiss (Doc. 21) at 12.

[153] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Ms. Hunter tries to avoid dismissal by arguing that MidFirst
is in possession of "much of the factual information required to plead a fraud claim with more specificity . . . ."
Br. in Supp. of Pl.'s Resp. to MidFirst's Mot. to Dismiss (Doc. 21) at 11.  That could be true with respect to
information about the first three fraud elements, but the Court spotted those elements to Ms. Hunter.  Ms. Hunter
is certainly in possession of the information concerning her actions with respect to the foreclosure.  She also
ostensibly knows what (if any) damages she suffered because of the alleged false representations.  Reliance and
damages are the elements Ms. Hunter fails on.

of a misdemeanor.[154]  This statute does not provide a private cause of action.[155]

The statute does say that a person "who suffers loss or damages as a result of conduct that is prohibited under subsection (a) of this section and who must bring civil action to remove any cloud from his or her title . . . is entitled to three (3) times actual damages, punitive damages, and costs, including any reasonable attorney's fees or other costs of litigation reasonably incurred."[156] But this provision speaks only of additional remedies available to a victim who brings a recognized civil action, such as a quiet title action.[157]  Ms. Hunter has not brought a civil action to remove a cloud on her title.  She doesn't allege that she has any current title or interest in the Property that is clouded.  So, it is unlikely that she can bring the type of civil action this statute contemplates as a condition precedent to recovery.

Moreover, this statute allows for "treble the amount of actual damages."[158]  Ms. Hunter never sets out any facts showing actual damages.  In short, Ms. Hunter does not state a claim based on this statute.

### D.  Violations of the Arkansas Deceptive Trade Practices Act

Ms. Hunter fails to state a claim under the Arkansas Deceptive Trade Practices Act ("ADTPA").  The ADTPA forbids "[e]ngaging in any . . . unconscionable, false, or deceptive act or practice in business, commerce, or trade."[159]  As a general matter, "[t]o state a claim under the

---

[154] *Id.* § 5-37-226(b)(1)(A).  A person with a previous conviction under this statute or a person who violates this statute with respect to a specific type of victim (e.g., a judge) is guilty of a Class D or Class C felony, respectively.  *Id.* §§ 5-37-226(b)(1)(B) & (b)(2).

[155] *Accord McNeil v. Metro. Nat. Bank*, No. 4:13-cv-00076-JMM, 2013 WL 2099815, at *3 (E.D. Ark. May 14, 2013).

[156] *Id.* § 5-37-226(c).

[157] *See J. Michael Enters., Inc. v. Oliver*, 101 Ark. App. 48, 49, 270 S.W.3d 388, 389 (Ark. App. 2007) (affirming a trial court's judgment quieting title in Robert Oliver and awarding to Mr. Oliver punitive damages and attorney's fees pursuant to Arkansas Code Annotated section 5-37-226).

[158] Ark. Code Ann. § 5-37-226.

[159] *Id.* at § 4-88-107(a)(10).

[ADTPA], a private plaintiff must allege both (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) an injury resulting from such act."[160]

In 2017, the civil enforcement provision of the ADTPA was amended and now reads in pertinent part:

> A person who suffers an actual financial loss as a result of his or her reliance on the use of a practice declared unlawful by this chapter may bring an action to recover his or her actual financial loss proximately caused by the offense or violation, as defined in this chapter.
>
> . . .
>
> To prevail on a claim brought under this subsection, a claimant must prove individually that he or she suffered an actual financial loss proximately caused by his or her reliance on the use of a practice declared unlawful under [the ADTPA].[161]

"Actual financial loss" is defined as "an ascertainable amount of money that is equal to the difference between the amount paid by a person for goods or services and the actual market value of the goods or services provided to a person."[162]  Given this amendment, only plaintiffs that suffer "actual financial loss" as defined by the statute may bring a claim under the ADTPA civil enforcement provision.

MidFirst attacks Ms. Hunter's ADTPA claim on two fronts.  First, MidFirst argues that its alleged "failure to state the nature of the default does not amount to an allegation of . . . a deceptive

---

[160] *Parnell v. FanDuel, Inc.*, 2019 Ark. 412, at 4, 591 S.W.3d 315, 318 (quoting *Skalla v. Canepari*, 2013 Ark. 415, at 14, 430 S.W.3d 72, 82).

[161] *Id.* §§ 4-88-113(f)(1)(A)(2) & (f)(2); *see also Parnell*, 2019 Ark. 412, at 4, 591 S.W.3d at 318 (discussing the 2017 amendment).  Neither party's briefing references the 2017 amendment.  The Eighth Circuit has briefly discussed the amendment.  *Apex Oil Co. v. Jones Stephens Corp.*, 881 F.3d 658, 663 (8th Cir. 2018).  In *Apex Oil*, the Eighth Circuit affirmed the trial court's dismissal of Apex's ADTPA claim.  *Id.*  The Eighth Circuit acknowledged that Apex's claim arose under a prior version of the statute, which required a plaintiff to show that she "suffer[ed] actual damage or injury as a result of an offense or violation."  *Id.* at 662 (citing Ark. Code Ann. § 4-18-113(f) (2011)).  With respect to the 2017 amendment, the Eighth Circuit noted that the amendment clarified that a plaintiff must show reliance to prevail on a claim under the ADTPA.  *Id.* at 663.

[162] Ark. Code Ann. § 4-88-102(9).

trade practice."[163]  This argument ignores Ms. Hunter's allegations relating to MidFirst's knowing failure to comply with the modification and forbearance provisions of the Act.  It also ignores Ms. Hunter's allegations about the filing of the false Trustee's Deed.  These acts conceivably constitute a deceptive trade practice.  Even so, the Court is inclined to agree with MidFirst that Ms. Hunter fails to chin the bar on the first element (a deceptive practice).  But let's give this one to Ms. Hunter.

Second, MidFirst argues that Ms. Hunter "does not explain how MidFirst's alleged violation caused her to suffer any actual damages."[164]  Ms. Hunter says that she "clearly alleges that she was forced from her home,[165] that the foreclosure sale was illegal and should be declared void," and that she "was deprived of possession and title to her property."[166]  None of this, however, appears to fall within the strict definition of "actual financial loss" added to the statute in 2017.[167]  Ms. Hunter's Complaint doesn't even say she had ever made mortgage payments such that she had equity in her home.  To be clear, Ms. Hunter might have been able to plead this, but she didn't.

Moreover, and most importantly, the 2017 amendment explicitly requires a plaintiff to show that he or she "suffered actual financial loss proximately caused by his or her reliance on the use of a practice declared unlawful under [the ADTPA]."[168]  As mentioned in the fraud section above, Ms. Hunter's Complaint alleges no facts showing that she changed her position because of

---

[163] Br. in Supp. of MidFirst's Mot. to Dismiss (Doc. 13) at 12.

[164] *Id.*

[165] Ms. Hunter never actually alleges that she was forced from her home or when she was forced from her home.

[166] Pl.'s Resp. to MidFirst's Mot. to Dismiss (Doc. 21) at 14.

[167] Ark. Code Ann. § 4-88-102(9).

[168] *Id.* § 4-88-113(f)(2).

any of MidFirst's alleged misconduct.  So even if Ms. Hunter had alleged facts about financial loss, she would still fail to state a claim under the ADTPA.

<u>**Conclusion**</u>

For the foregoing reasons, Plaintiff's Motion to Remand is DENIED.  Wilson & Associates's Motion to Dismiss is denied as moot.  MidFirst Bank's Motion to Dismiss with prejudice is GRANTED in part and DENIED in part.

MidFirst sought dismissal with prejudice.  The Court believes it appropriate to give Ms. Hunter the opportunity to try and amend her Complaint to fix the deficiencies identified.  To be fair, the Court is not sure she can do so.  But she should have the opportunity to try.  Ms. Hunter has thirty days from the date of this Order to file an Amended Complaint.

IT IS SO ORDERED this 20th day of December 2021.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE